UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

UNITED STATES OF AMERICA PLAINTIFF

V. CIVIL ACTION NO. 3:06CV697 DPJ-JCS

HENRY FIELDS, ET AL. DEFENDANTS

ORDER

This cause is before the Court on motion of Defendant/Counterclaim Plaintiff Regions Bank ("Regions" or "the bank") for summary judgment [55]. Plaintiff, the United States of America, has responded in opposition to Regions' motion and has filed its own motion for summary judgment [65]. Having fully considered the parties' submissions and the applicable authorities, the Court finds that Regions' motion should be denied and the United States' motion should be granted.

I. Facts/Procedural History

This dispute arises from the failure of Defendants Henry and Cynthia Fields to fully pay their federal taxes from 1994 through 2004. By 2004, the IRS had assessed and recorded federal income tax liabilities against Henry and Cynthia Fields in excess of $461,000 and federal employment and unemployment tax liabilities against Henry Fields in excess of $691,000.

In addition to seeking judgment as to the tax debt, the United States also seeks to foreclose its federal tax liens on an approximately two-acre parcel of real property located in Hinds County, Mississippi, on which Henry Fields built a house. Although Fields built the house for his family's residence, he was a co-tenant with an undivided one-sixth (1/6) interest in the

land. His five siblings owned the remaining five-sixths (5/6) interest.

In July 2004, approximately four years after completing construction on his home, Henry Fields attempted to obtain a loan from Union Planters Bank (a predecessor to Defendant Regions). There is no dispute in the record that Henry Fields mentioned the home to a bank officer as potential collateral, but the bank informed him that the tax liens would preclude the loan. Henry Fields claims, without contradiction, that Union Planters then told him that if he transferred the property to someone else, the bank could make the loan to the new owner using the same property as collateral. Within a week, Fields did just that.

On July 20, 2004, Henry Fields and his five siblings executed a quitclaim deed transferring ownership to Fields' teenage son Eric. Ten days later, on July 30, 2004, the teenager mortgaged the property to Union Planters under a deed of trust to secure a $100,000 line of credit, which Eric quickly exhausted by paying his father's employees, purchasing work-related trucks and paying the family's bills. Eric Fields thereafter defaulted on the loan, prompting collection efforts by the bank.

The United States sued Henry, Cynthia and Eric Fields, the five siblings, Regions (as the successor to Union Planters Bank), and other individuals who are not relevant to the pending motions. After answering the Complaint, Regions moved for summary judgment claiming that it has a priority interest as to five-sixth (5/6) of the two-acres it took as collateral for Eric Fields' line of credit. The United States responded and filed its own motion for summary judgment asking the Court to 1) enter judgment against Henry and Cynthia Fields for the outstanding tax liabilities and 2) enter an order that the two-acre parcel of property be sold with the entire

proceeds applied to the outstanding tax liens.[1]

## II. Analysis

### A. Summary Judgment Standard

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. "The party moving for summary judgment bears the initial burden of 'informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 422 (5th Cir. 2007) (noting that the moving party bears the "burden of demonstrating that there is no genuine issue of material fact"). "The non-moving party must then come forward with specific facts showing there is a genuine issue for trial." *Washburn*, 504 F.3d at 508.

There are currently two motions for summary judgment pending in this action; one filed by Plaintiff, and one filed by Regions. While Regions and Plaintiff have responded to each others' motions, the remaining Defendants, including Henry, Cynthia, and Eric Fields, have not. Thus, a number of the issues raised in the motions are unopposed.[2]

---

[1]During oral argument, the United States informed the Court that it would voluntarily dismiss a portion of the relief originally sought in its Complaint and summary judgment motion. More specifically, the Government no longer seeks to foreclose on other property Fields owns as a co-tenant with his siblings. Once the Government files that motion, the Court will grant it with a separate order.

[2]Henry Fields, his immediate family, and his siblings, all answered the Complaint through counsel. However, their attorney withdrew and they now represent themselves. Although the family members have generally failed to defend the case, they did appear when these motions

The lack of response will not alone justify granting the pending motions. *See* Uniform Local Rule 7.2(C)(2) (establishing that summary judgment motions may not be granted as unopposed). As explained by the Fifth Circuit, district courts must first consider the record.

> [I]f the moving party fails to establish by its summary judgment evidence that it is entitled to judgment as a matter of law, summary judgment must be denied--even if the non-movant has not responded to the motion. But where the movant's summary judgment evidence does establish its right to judgment as a matter of law, the district court is entitled to grant summary judgment, absent unusual circumstances.

*McDaniel v. Sw. Bell Tel.*, 979 F.2d 1534, 1992 WL 352617, at *1 (5th Cir. 1992) (unpublished table decision) (citations omitted) (affirming summary judgment where counsel failed to file timely response).

In other words, the Court cannot grant a summary judgment motion for the mere lack of response, but if the record establishes that the movant met its burden under Rule 56(c), then the absence of responsive affidavits or other record evidence creating a genuine issue for trial will justify an order granting the motion. *Id.*; *see also Sanders v. Bell Helicopter Textron Inc.*, 199 F. App'x 309, 310 (5th Cir. 2006) (holding that record supported summary judgment where non-movant failed to respond); *Stewart v. City of Bryan Public Works*, 121 F. App'x 40, 42 (5th Cir. 2005) (same); *Ahart v. Vickery*, 117 F. App'x 344, 344 (5th Cir. 2004) (same).

B. Substantive Issues

*1. Judgment as to Tax Liens*

The United States has presented properly authenticated Certificates of Assessments, Payments and other Specified Matters as to the claimed debt. These government forms constitute

---

were heard on March 5, 2009, and the Court granted them an opportunity to address the motions.

admissible evidence, and it is well settled that federal tax assessments are presumptively valid. *See, e.g., Welch v. Helvering*, 290 U.S. 111, 115 (1933). Accordingly, the Government met its burden under Rule 56(c). The Fields did not respond to the motion and informed the Court during the motion hearing that they have no records of the alleged debt. As such, there is nothing in the record to controvert the assessments or to suggest that the United States failed to follow the statutory procedures necessary to establish a tax lien on the property. *See McCarty v. United States*, 929 F.2d 1085, 1089 (5th Cir. 1991). The United States is entitled to reduce the assessments to judgment. *Id.*

*2. Sale of the Two-Acre Parcel*

Plaintiff's motion also seeks the sale of the disputed two-acre parcel. None of the property owners responded to the motion or offered any argument during the motion hearing. For its part, Regions agrees that the property should be sold, but claims that its lien on the property is superior to the federal tax lien. Regions first claims that it was a bona fide purchaser for value and alternatively asserts that five-sixths (5/6) of the interest Eric Fields obtained through the quitclaim deed was unencumbered by the tax lien against his father. According to Regions, it is therefore entitled to five-sixths (5/6) of the proceeds from the sale of the property. Neither argument prevails.

Under Mississippi law, an "innocent purchaser must prove (1) valuable consideration; (2) the presence of good faith; and (3) the absence of notice of the adverse interest." *Wicker v. Harvey*, 937 So. 2d 983, 992 (Miss. Ct. App. 2006). That a purchaser is a bona fide purchaser for value constitutes "an affirmative defense and must be sustained by competent proof." *Memphis Hardwood Flooring Co. v. Daniel*, 771 So. 2d 924, 933 (Miss. 2000). In this case, Regions

(through its predecessor Union Planters Bank) paid valuable consideration when it extended the line of credit. Regions fails, however, to otherwise establish this affirmative defense.

First, there is a distinct absence of good faith. The Mississippi Court of Appeals has explained that its analysis of good faith is "guided by the definition of good faith, defined in part as 'absence of intent to defraud or to seek unconscionable advantage.'" *In re Estate of Wheeler*, 958 So. 2d 1266, 1273 (Miss. Ct. App. 2007) (quoting BLACK'S LAW DICTIONARY 701 (7th ed. 2000)). In this case, the parties agree that Union Planters refused to accept the property as collateral for a loan to Henry Fields due to the Government's pre-existing tax liens. However, bank officers informed Fields that he could circumvent the problem by simply transferring the property to someone else who would then use the collateral to obtain the loan (presumably as Fields' proxy). Specifically, Henry Fields testified that the bank recommended the transfer "because that was the only way they were going to be able to close the loan." Henry Fields Depo. at 50-51. After Eric obtained title to the property, the bank issued the teenager a $100,000 line of credit that was largely used for the same purposes as the loan his father requested.

On its face, the transaction lacks good faith and demonstrates an attempt to gain an unconscionable advantage over the Government's pre-existing liens. Other facts further prove the point. For example, the deposition testimony suggests that the bank officer believed Henry Fields owned the property when the transfer scheme was recommended. There is no record evidence suggesting that the loan officer thought, at that time, that five-sixths (5/6) of the property might not be subject to the tax lien. If the bank would not accept the collateral when it believed Fields was the owner, then how could it in good faith state that it would accept the same collateral if transferred to a third party who would obtain the loan on Fields' behalf? This and other evidence

demonstrates an attempt to subvert the Government's tax lien.

Regions also fails to establish an absence of notice. Under Mississippi law,

> when, in respect to a matter in which he has a material interest, a person has knowledge of such facts as to excite the attention of a reasonably prudent man and to put him upon guard and thus to incite him to inquiry, he is chargeable with notice, equivalent in law to knowledge, of all those further relevant facts which such inquiry, if pursued with reasonable diligence, would have disclosed.

*Wicker*, 937 So. 2d at 993 (citations omitted) (holding that purchaser who was told of potential boundary dispute was on notice and was not a bona fide purchaser for value). In this case, Regions knew the property was subject to tax liens when it recommended the transfer of title. Regions has the burden of establishing this affirmative defense, and the record before the Court fails as a matter of law.[3]

Regions' second argument is that five-sixths (5/6) of the interest Eric obtained in the property was not subject to the federal tax liens because the land was transferred by the non-liable siblings. This too fails. As an initial point, Regions is probably correct that prior to July 20, 2004, Henry Fields merely held an undivided interest in the two acres with his five siblings. However, the point is of limited relevance because all of the owners executed a quitclaim deed in favor of Eric Fields on July 20, 2004. As of that date, Eric Fields was the only person with legal title to the two acres and the home. Ten days later, on July 30, 2004, Eric signed the deed of trust with the bank. As explained below, the Government's tax liens attached to 100% of the two acres ten days before the bank acquired its interest, because Eric Fields obtained the property as his

---

[3]Regions observed in its reply that "there are no disputes as to any material issues of fact." Brief of Defendant, Regions Bank in Opposition to Plaintiff's Motion for Summary Judgment and in Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment [68] at 2.

father's nominee on July 20, 2004. The United States therefore obtained a priority interest. *See Read v. U.S. ex rel. Dept. of Treasury*, 169 F.3d 243, 252 (5th Cir. 1999) (noting the "general rule" that "competition for priority between tax liens and other encumbrances is determined on the basis of first in time, first in right").

The analysis appropriately begins with the statutory basis for the Government's liens. Title 26 U.S.C. § 6321 provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321. As noted by the United States Supreme Court, "[s]tronger language could hardly have been selected to reveal a purpose to assure the collection of taxes." *Glass City Bank v. United States*, 326 U.S. 265, 267 (1945). Significantly, "Congress meant to reach every interest in property that a taxpayer might have," *United States v. National Bank of Commerce*, 472 U.S. 713, 719 (1985), and that includes "not only [] property owned by the debtor at the time the lien attaches, but also to after-acquired property until the tax liability is satisfied." *In re Orr,* 180 F.3d 656, 660 (5th Cir. 1999) (citing *Glass City Bank*, 326 U.S. at 267-69). Accordingly, if Henry Fields acquired full interest in the property after the liens attached, then the liens would expand to encompass the property as a whole pursuant to § 6321.

"Property," as defined by the statute, includes "not only the property and rights to property owned by the delinquent taxpayer, but also property held by a third party if it is determined that the third party is holding the property as a nominee . . . of the delinquent taxpayer." *Spotts v. United States*, 429 F.3d 248, 251 (6th Cir. 2005). Under the nominee theory, the IRS can seize

property to which a third person has legal title if the taxpayer actually has "beneficial ownership of the property." *Oxford Capital Corp. v. United States,* 211 F.3d 280, 284 (5th Cir. 2000).

Whether property is held by a taxpayer's nominee is determined by reference to state law, but when the law of the forum state does not set forth a test for determining whether an entity is the nominee of another, the court is "guided by the common-law factors generally applied by federal courts to determine the existence of a nominee relationship." *May v. United States*, No. 07-10531, 2007 WL 3287513, at *2 (11th Cir. Nov. 8, 2007) (citing *Battle v. United States*, No. 9:06cv109, 2007 WL 1424553, at *5 (E.D. Tex. Feb. 7, 2007) (same); *Cody v. United States*, 348 F. Supp. 2d 682, 694 (E.D. Va. 2004) (same)).

Here, none of the parties have directed the Court to any Mississippi law which would provide guidance as to the standards for determining nominee ownership. Accordingly, the Court turns to federal precedent and notes that the Fifth Circuit Court of Appeals has recognized the following factors as applied by other federal courts:

> (a) No consideration or inadequate consideration paid by the nominee; (b) Property placed in the name of the nominee in anticipation of a suit or occurrence of liabilities while the transferor continues to exercise control over the property; (c) Close relationship between transferor and the nominee; (d) Failure to record conveyance; (e) Retention of possession by the transferor; and (f) Continued enjoyment by the transferor of benefits of the transferred property.

*Oxford Capital Corp.*, 211 F.3d at 284 n.1 (citing *Towe Antique Ford Found. v. Internal Revenue Servs.*, 791 F. Supp. 1450, 1454 (D. Mont. 1992), *aff'd without opinion*, 999 F.2d 1387 (9th Cir. 1993)). The Court will examine each factor in the order they are listed.

First, although the quitclaim deed states that Eric Fields paid ten dollars for the land and the home his father spent five years building, there is no dispute that the teenager paid nothing.

Second, it is apparent from the record that Henry Fields, at the suggestion of Union Planters, arranged to have the quitclaim deed executed in his son's favor to avoid the consequences of the tax liens and enable the bank to close the loan. Third, the relationships between the transferors and the transferee were obviously close. Fourth, the deed was recorded. Fifth, Henry Fields retained the same level of possession he enjoyed before the transfer. There is no dispute that the living arrangements within the home stayed the same after title was transferred to Eric Fields. The family members stayed in the same rooms, no rent was paid to the new owner, and bills were sent to the same addressees and paid by the family in the same manner as before the transfer. In other words, nothing changed. Finally, the record evidence is undisputed that Henry Fields continued enjoyment of the benefits of the property after the transfer. Accordingly, the Court finds as a matter of law that these factors demonstrate a nominee relationship between Eric and Henry Fields as of the July 20, 2004 transfer.

Regions contended at the motion hearing that nominee status cannot exist because Henry Fields never held title to his siblings' interests in the property and could not, therefore, have transferred those interests to his son. This same argument was rejected by the Tenth Circuit Court of Appeals in *Holman v. United States*, where a delinquent taxpayer's wife transferred full title to the couple's home to herself and a third party. 505 F.3d 1060 (10th Cir. 2007). The district court ruled that because the taxpayer had never transferred legal title to the property, the transferee could not be considered the taxpayer's nominee. The Tenth Circuit reversed, holding that the lack of transfer from the delinquent taxpayer to the third party was not sufficient to defeat enforcement of the nominee lien. *Id.* at 1066. In doing so, the court noted:

Although in many instances the delinquent taxpayer will have transferred legal title

> to a third party, an actual transfer of legal title is not essential to the imposition of a nominee lien. A delinquent taxpayer who has never held legal title to a piece of property but who transfers money to a third party and directs the third party to purchase property and place legal title in the third party's name may well enjoy the same benefits of ownership of the property as a taxpayer who has held legal title. In both instances, the third party may be the taxpayer's nominee.

*Id.* at 1065. The court further observed that it and other courts had "recognized that a tax lien may be enforced when the taxpayer has never held legal title to the property but has directed that title be placed in a third party's name." *Id.* (citing *United States v. Miller Bros. Const. Co.*, 505 F.2d 1031, 1036 (10th Cir. 1974); *Scoville v. United States*, 250 F.3d 1198, 1202-03 (8th Cir. 2001)).

The present case is analogous. Although Henry Fields never paid his siblings to transfer their interests to Eric, there was no need for payment. The record is undisputed that upon Henry Fields' request, the siblings readily transferred their interests to Eric without consideration and without so much as an explanation as to why their brother wanted the property in his son's name. Henry Fields Depo. at 48. In this regard, Henry Fields directed the transfer to his son to avoid the impediment created by the federal tax liens. Thereafter, he continued to enjoy the same benefits of possession he held before the transfer.

The Court concludes that the United States has met its burden under Rule 56(c) of establishing that Eric was Henry's nominee with respect to the disputed two-acre parcel. Because § 6321 applies to after-acquired property, the Government's liens reached 100% of the property ten days before Eric Fields executed the deed of trust in favor of the bank. The United States was first in time, and the entire two-acre parcel is therefore subject to the government's tax liens. *See Read*, 169 F.3d at 252 (noting that priority interests are determined by "first in time, first in right"). As such, the Court grants the United States' motion seeking foreclosure and denies

Regions' motion seeking five-sixths (5/6) of the proceeds.[4]

III. Conclusion

The Court concludes that Plaintiff's motion for summary judgment should be granted to the extent it was not voluntarily withdrawn and that Regions' motion for summary judgment should be denied. The Court finds as follows:

Plaintiff's request for a judgment regarding the tax liabilities is granted in the amount of $691,580.88 as to Henry Fields and $461,126.14 as to Henry and Cynthia Fields, plus additional interest and penalties accruing from March 27, 2008; and

Plaintiff's request for an order directing a sale of the two acre property with the proceeds applied to the tax liens is granted.

The United States is directed to submit a proposed judgment and a proposed order directing the sale within five (5) days of entry of this order.

**SO ORDERED AND ADJUDGED** this the 9th day of March, 2009.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

---

[4]Though not relevant to the legal analysis, Regions is not without recourse as the Court previously granted judgment in Regions' favor as to Eric Fields and his co-signer.